UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARTURO G.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C19-1783-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical opinions and in discounting his own subjective testimony. (Dkt. # 10 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.     BACKGROUND

Plaintiff was born in 1968, has an 11th grade education and additional training in operating a forklift. AR at 296. He has worked in customer service and equipment maintenance; in a warehouse performing shipping, packing, and assembly work; performing truck

maintenance; as a delivery driver; and as a landscape laborer and in other temporary labor jobs. *Id*. at 312. Plaintiff was last gainfully employed in December 2014. *Id*. at 296.

In July 2015, Plaintiff applied for benefits, alleging disability as of February 25, 2015. AR at 259-71. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 142-45, 151-66. After the ALJ conducted hearings in March and October 2017 (*id*. at 29-73), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 11-22.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: moderate persistent depressive disorder; moderate persistent asthma controlled with handheld inhaler; rotator cuff impingement syndrome of the left shoulder; mild left cubital tunnel syndrome/ulnar neuropathy; and knee pain, status post bilateral meniscus repair by history.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work with additional limitations: he can use both arms to lift/carry 20 pounds occasionally and 10 pounds frequently. With his unassisted left arm, he can perform tasks that require him to lift and carry no more than 2 pounds. He can perform tasks that require him to frequently push and pull using both arms. He cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, crouch, crawl, and kneel. He can frequently balance. He cannot reach overhead with his left arm, but can reach occasionally to the front and to the side with that arm. He cannot have exposure to vibration, hazards such as unprotected heights and large moving equipment, or inhaled irritants. He can understand, remember, and apply information consistent with completing tasks that require a General Education Development reasoning level of 2 or less. He can work in a routine setting with few changes that affords the usual work breaks throughout the day.

Step four: Plaintiff can perform his past relevant work as a cashier II.

AR at 11-22.

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.    DISCUSSION

#### A.    The ALJ Erred in Discounting Plaintiff's Subjective Testimony

The ALJ found Plaintiff's subjective allegations to be inconsistent with the record, in an

incomplete sentence, but did not go on to identify any particular inconsistency, with the exception of discussing conflicts between his allegations and the objective medical evidence pertaining to his ability stand and walk, and use his left arm. AR at 16, 21. The majority of the ALJ's findings that arguably pertain to her assessment of Plaintiff's allegations simply summarize the medical record without explaining why that evidence undermines Plaintiff's allegations. *Id.* at 16-19.

Plaintiff argues that the ALJ's summary of the medical evidence does not constite the clear and convincing reasons that must be provided, in the Ninth Circuit, in order to discount a claimant's subjective allegations. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) (ALJ failed to provide specific reasons, allowing for meaningful review where "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination"). The Court agrees that the majority of the ALJ's discussion of the medical evidence does not explain why she discounted Plaintiff's allegations. The evidence summarized could be interpreted in a way that would arguably undermine Plaintiff's allegations, but the Court will not supply that rationale in the first instance.

Plaintiff does not address, however, the ALJ's explanation regarding his allegations of difficulty standing/walking and using his left arm. The ALJ's findings in this regard read, in relevant part:

> [Plaintiff] reported that walking was his only exercise in 2016 and 2017. ([AR 790, 1066].) Exams, including the 2017 consultative exam, showed normal gait, as well as normal motion and strength in the knees. He received no treatment for his knee pain after 2015. The claimant's allegations that he is highly limited in his ability to stand or walk are not consistent with these factors or the medical record.
>                               . . .
>
> The claimant's most well document impairment is his neck, shoulder, and upper extremity pain, but the claimant's allegations of inability to use his left arm are not fully consistent with the record. The claimant has avoided any treatment for

his neck pain aside from narcotics, which as documented in detail above were
well used. Aside from limited motion in his neck, which is consistent with the
MRI, he has clinical correlation for C7 radiculopathy. Further, even his shoulder
had only mild weakness in 2016, and full strength by 2017. Based on periods of
shoulder weakness, I find that for at least 12 months, the claimant had minimal
use of his left upper extremity. This finding likely underestimates his true level of
functioning for much of the period.

AR at 21. These findings identify some inconsistency between the medical record and Plaintiff's

allegations, but the ALJ ultimately (although reluctantly) credited Plaintiff's alleged limitations

in his left arm. Thus, the only inconsistency cited by the ALJ as a reason to *discount* Plaintiff's

allegations pertains to his standing/walking limitations.

In addressing Plaintiff's ability to stand/walk, the ALJ focused on the evidence of

Plaintiff's knee condition, without acknowledging that Plaintiff's treating physician indicated

that his standing/walking abilities were also limited by his spondylosis and stenosis. AR at 767-

69. Because the ALJ's assessment of Plaintiff's standing/walking limitations does not fully

address all of the medical evidence, the ALJ's incomplete reasoning does not constitute a clear

and convincing reason to discount Plaintiff's allegations. The ALJ should reconsider Plaintiff's

allegations on remand.

**B.      The ALJ Erred in Assessing Medical Opinion Evidence**

Plaintiff challenges the ALJ's assessment of opinions written by treating physician Kami

Harless, M.D., and examining physician Jaclyn Russell, M.D. According to Plaintiff, the ALJ

erred in either discounting or failing to discuss opinions written by Drs. Harless and Russell.

*1.      Legal Standards*

Where contradicted, a treating or examining doctor's opinion may not be rejected without

"'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

1    *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499,

2    502 (9th Cir. 1983)).

3                    2.       *Dr. Harless*

4           In July 2015, Dr. Harless completed a DSHS form describing Plaintiff's physical

5    symptoms and limitations, and opined that his conditions limited him to performing sedentary

6    work. AR at 701-05. Dr. Harless indicated that her opinion was rendered pending further

7    evaluation from orthopedics/neurosurgery regarding whether to treat Plaintiff's conditions with a

8    steroid injection or surgery. *Id*. at 749. She provided a nearly identical opinion in May 2016. *Id*.

9    at 767-71.

10          The ALJ explained that she gave little weight to Dr. Harless's 2015 opinion because it

11   was inconsistent with Dr. Harless's treatment notes, "which showed only some loss of knee and

12   neck motion, but otherwise showed almost full strength and normal gait." AR at 20. The ALJ

13   also noted that Dr. Harless explicitly noted that her opinion was provided pending further

14   evaluation, but the ALJ noted that Plaintiff's further evaluations "did not show any greater

15   findings." *Id*. (citing *id*. at 731). The ALJ did not explicitly acknowledge the existence of Dr.

16   Harless's 2016 opinion, but did cite it when explaining that she gave little weight to the 2015

17   opinion. *Id*. at 20.

18          Plaintiff argues that the ALJ erred in failing to acknowledge that Dr. Harless's treatment

19   notes described more abnormalities than the ALJ described: Plaintiff points to notes where Dr.

20   Harless found reduced leg and shoulder strength as well, along with positive McMurray's, varus,

21   and valgus testing "demonstrating ongoing instability in Plaintiff's knees." (Dkt. # 10 at 5 (citing

22   AR at 521-22).) The Commissioner reiterates the ALJ's summary of the treatment notes, without

23

1    acknowledging the additional findings emphasized by Plaintiff or explaining why the ALJ did

2    not misrepresent the treatment notes in ignoring those abnormal findings. (Dkt. # 11 at 11.)

3            Furthermore, the ALJ cited one orthopedic exam that showed full range of motion in

4    Plaintiff's neck, but the ALJ did not acknowledge the abnormal findings contained in that exam

5    report, such as "profound weakness in C6 and C7 notably with resisted elbow extension and with

6    trying to give the thumbs up sign" and a positive Spurling sign. *See* AR at 731. Plaintiff also

7    points to other examinations showing a reduced cervical range of motion as well as findings of

8    weakness in Plaintiff's back and shoulder. (Dkt. # 10 at 6 (citing AR at 787, 1057-58).)

9            The Commissioner contends that Plaintiff has not shown that the ALJ's interpretation of

10   the evidence was unreasonable because "the record is replete with largely normal examinations

11   throughout the period at issue." (Dkt. # 11 at 13.) But the Commissioner cites many

12   examinations that are arguably not "largely normal." *See, e.g.*, AR at 370-71 (Plaintiff fitted with

13   knee immobilizer and crutches), 377 (finding radiculopathy in Plaintiff's left arm extending to

14   his fourth and fifth digits), 394 (treatment notes indicate that Plaintiff has "associated findings

15   suggestive of C8 radiculopathy), 409 (describing altered gait, limited knee range of motion), 420

16   (antalgic gait, medial joint line tenderness in the left knee), 731 (positive Spurling sign and

17   painful cervical range of motion, with "profound weakness in C6 and C7"), 863-64

18   (documenting limited range of motion due to pain in left shoulder/neck), 924 ("[m]ild restricted"

19   shoulder range of motion, and weak strength in arm muscle groups), 1044 (reduced neck range

20   of motion and decreased sensation in the left C7 dermatome). Furthermore, as discussed above,

21   even the orthopedic examination the ALJ cited contains abnormal findings that the ALJ failed to

22   mention in the decision, when finding that this examination failed to show any greater findings

23   than Dr. Harless's opinions. Because the ALJ's decision mischaracterizes the record when

finding Dr. Harless's opinions to be inconsistent with her own notes as well as other

examinations, the Court finds that the ALJ's reasoning is not legitimate.

On remand, the ALJ should reconsider Dr. Harless's 2015 and 2016 opinions and either

credit them, or provide legally sufficient reasons to discount them.

### 3.    *Dr. Russell*

In May 2017, Dr. Russell examined Plaintiff and wrote a narrative report and completed a

form opinion describing his symptoms and limitations. AR at 1041-52. Dr. Russell diagnosed

Plaintiff with neck pain, knee pain, hypertension, fatigue, and depression. *Id*. at 1045. Dr. Russell

opined that Plaintiff was limited to standing/walking for four hours, "given the C7 radiculopathy

until this is further taken care of." *Id*. Dr. Russell also found that Plaintiff was limited to lifting

up to 10 pounds frequently, due to the possible radiculopathy. AR at 1045, 1047. The ALJ

explained that she gave "some weight" to Dr. Russell's opinion, but found no basis for Dr.

Russell's conclusion that Plaintiff was limited to standing/walking four hours per day, because

there is "no obvious link" between neck/arm pain and his ability to stand/walk, and because

radiculopathy has never been confirmed by testing or consistently observed. *Id*. at 20-21.

Plaintiff argues that the ALJ erred in relying on her lay interpretation of the medical

evidence to find that there was no link between Plaintiff's neck/arm pain and his ability to

stand/walk, given that Dr. Harless found that Plaintiff's neck/arm pain indeed limited his ability

to walk, and Dr. Russell reviewed Dr. Harless's opinion as part of her examination. AR at 768,

1041. But, even assuming the ALJ erred in discounting the restriction to four hours of

standing/walking, this error was harmless in light of the ALJ's alternative finding that Plaintiff

could perform the job of cashier II even with that restriction included. *See id*. at 22.

With respect to the lifting restrictions described by Dr. Russell, the ALJ rejected them as based on a presumption that Plaintiff's radiculopathy did exist, when the objective evidence showed otherwise. AR at 20-21. Plaintiff himself admits that the evidence does "not support a conclusion that Plaintiff's limitations arose from radiculopathy[.]" (Dkt. # 10 at 8.) Thus, because Dr. Russell's opinion was predicated on radiculopathy that was not confirmed by the record, the ALJ did not err in discounting Dr. Russell's opinion in light of that inconsistent evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). The ALJ will, however, have the opportunity to reconsider similar lifting restrictions (AR at 768-69) in reconsidering Dr. Harless's opinions on remand.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Plaintiff's allegations as well as Dr. Harless's 2015 and 2016 opinions.

Dated this 30th day of June, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge